**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| Authentixx LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 3:25-cv-01599-B |
| | § | |
| Pickleball OpCo LLC, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |

## MOTION TO DISMISS AMENDED COMPLAINT
## FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 1

III.  LEGAL STANDARD.......................................................................................... 2

    A.    Patent Eligibility ...................................................................................... 2

    B.    Sufficiency of the Pleadings .................................................................... 3

IV.   ANALYSIS........................................................................................................... 4

    A.    The '863 Patent Is Patent-Ineligible under 35 U.S.C. § 101 and Should Be Dismissed............................................................................................ 4

        1.    Independent claim 9 is representative of the remaining claims. ................. 4

        2.    The '863 Patent is directed to an unpatentable abstract idea under *Alice* step one. ...................................................................................... 8

            a.    The Federal Circuit has routinely found that claims directed toward the idea of gathering, processing, and displaying data are abstract. .................................................................. 10

            b.    The claims do not provide improvements to computer functionality such that abstractness is overcome .......................... 12

        3.    The '863 Patent does not show an inventive concept under *Alice* step two........................................................................................ 14

        4.    This issue is ripe for resolution at the pleading stage ................................ 15

    B.    The Amended Complaint Fails to Allege a Plausible Claim for Patent Infringement...................................................................................... 16

        1.    Plaintiff fails to allege facts sufficient to support a plausible claim of infringement........................................................................................ 17

        2.    Plaintiff fails to allege that a single entity performs every step of the claimed method........................................................................................ 21

V.    CONCLUSION................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
  882 F.3d 1121 (Fed. Cir. 2018)................................................................14, 15

*Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*,
  728 F.3d 1336 (Fed. Cir. 2013)......................................................................14

*Addiction & Detoxification Inst. L.L.C. v. Carpenter*,
  620 F. App'x 934 (Fed. Cir. 2015) ..................................................................4

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
  2015 WL 3757497 (W.D. Tex. June 12, 2015) ................................................4

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
  797 F.3d 1020 (Fed. Cir. 2015)................................................................17, 21

*Alice Corp. v. CLS Bank Int'l*,
  573 U.S. 208 (2014) ............................................................................. *passim*

*Appistry, Inc. v. Amazon.com, Inc.*,
  195 F. Supp. 3d 1176 (W.D. Wash. 2016), *aff'd sub nom.* 676 F. App'x 1008
  (Fed. Cir. 2017)..........................................................................................9, 15

*Artrip v. Ball Corp.*,
  735 F. App'x 708 (Fed. Cir. 2018) ..................................................................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................1, 2

*Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*,
  687 F.3d 1266 (Fed. Cir. 2012)..................................................................3, 16

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..............................................................................1, 2, 21

*Bilski v. Kappos*,
  561 U.S. 593 (2010)........................................................................................2

*Bot M8 LLC v. Sony Corp.*,
  4 F.4th 1342 (Fed. Cir. 2021) ....................................................................4, 17

*Brumfield v. IBG LLC*,
  97 F.4th 854 (Fed. Cir. 2024) ..................................................................17, 18

*BSG Tech. LLC v. BuySeasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018)..................................................................7

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) ......................................13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014)......................................................................4, 7, 12

*Customedia Techs., LLC v. Dish Network Corp.*,
   951 F.3d 1359 (Fed. Cir. 2020)..................................................................12

*Cuvillier v. Sullivan*,
   503 F.3d 397 (5th Cir. 2007) ..................................................................2

*Data Engine Techs. LLC v. Google LLC*,
   906 F.3d 999 (Fed. Cir. 2018)..................................................................2

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)..................................................................3

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
   815 F. App'x 529 (Fed. Cir. 2020) ..................................................................9

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016)..................................................................11, 12

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016)..................................................................13

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)..................................................................16

*Finjan, Inc. v. Blue Coat Sys., Inc.*,
   879 F.3d 1299 (Fed. Cir. 2018)..................................................................3

*First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*,
   389 F. Supp. 3d 456 (E.D. Tex. 2019)..................................................................8

*Heidary v. Amazon.com, Inc.*,
   2024 WL 4489918 (Fed. Cir. Oct. 15, 2024)..................................................................4

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017)..................................................................11, 14

*Intell. Ventures I LLC v. Erie Indem. Co.*,
   850 F.3d 1315 (Fed. Cir. 2017)..................................................................11

*Joy Techs., Inc. v. Flakt, Inc.*,
   6 F.3d 770 (Fed. Cir. 1993) ...........................................................................17

*In re Kollar*,
   286 F.3d 1326 (Fed. Cir. 2002)......................................................................18

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
   566 U.S. 66 (2012)..........................................................................................14

*Medisim Ltd. v. BestMed LLC*,
   910 F. Supp. 2d 591 (S.D.N.Y. 2012).............................................................21

*Moba, B.V. v. Diamond Automation, Inc.*,
   325 F.3d 1306 (Fed. Cir. 2003).......................................................................17

*Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*,
   809 F.3d 610 (Fed. Cir. 2015).........................................................................18

*NTP, Inc. v. Rsch. in Mot., Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005).......................................................................21

*PersonalWeb Techs. LLC v. Google LLC*,
   8 F.4th 1310 (Fed. Cir. 2021) .........................................................................11

*Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*,
   2016 WL 2742379 (E.D. Tex. May 10, 2016)................................................16

*Prism Techs. LLC v. T-Mobile USA, Inc.*,
   696 F. App'x 1014 (Fed. Cir. 2017) ..........................................................10, 13

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)........................................................10, 11, 13, 14

*Roberts Dairy Co. v. United States*,
   530 F.2d 1342 (Ct. Cl. 1976) ..........................................................................21

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018).........................................................................3

*Simio, LLC v. FlexSim Software Prods., Inc.*,
   983 F.3d 1353 (Fed. Cir. 2020).........................................................................9

*TLI Commc'ns LLC v. AV Auto. LLC*,
   823 F.3d 607 (Fed. Cir. 2016).........................................................................14

*Ultramercial, Inc. v. Hulu, LLC*,
   772 F.3d 709 (Fed. Cir. 2014).......................................................................2, 7

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2707 (2022)..............................10, 13

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016) ....................15

**Statutes**

35 U.S.C. § 101 ........................................................................................................ *passim*

35 U.S.C. § 271(a) ...............................................................................................16, 17, 18

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)........................................................................................... *passim*

## I.    INTRODUCTION

Defendant Pickleball OpCo LLC moves this Court to dismiss the entirety of Plaintiff Authentixx LLC's amended complaint pursuant to Rule 12(b)(6). Despite the second bite at the apple, nothing in Plaintiff's amendment cures the deficiencies described in Defendant's original motion to dismiss.

First, Plaintiff asserts infringement of U.S. Patent No. 10,355,863 (the "Asserted Patent" or the "'863 Patent"), which is patent-ineligible under the Supreme Court's precedent established in *Alice Corp. v. CLS Bank International*, 573 U.S. 208 (2014). Specifically, the claims of the '863 Patent are directed to the abstract idea of gathering, processing, and displaying data and fail to solve any unique technological problem to overcome their abstract idea. There are no factual allegations, accepted as true, that prevent resolving this 35 U.S.C. § 101 issue as a matter of law under Rule 12(b)(6).

Second, the amended complaint does not allege facts sufficient to put Defendant on proper notice of how any of its products or services plausibly infringes the '863 Patent, and therefore, the complaint is subject to dismissal under Rule 12(b)(6) for this additional reason. Instead, the complaint provides only the barest description of how Defendant allegedly infringes and includes screenshots with minimal explanation from Defendant's website. These generic, nonspecific images and allegations fail to meet the pleading standard set by *Twombly*, *Iqbal*, and the Federal Rules of Civil Procedure.

## II.    BACKGROUND

Plaintiff asserts in Count 1 of the amended complaint that Defendant directly infringes the '863 Patent. The '863 Patent was issued on July 16, 2019, and is titled "System and Method for Authenticating Electronic Content." Dkt. No. 15-1. The amended complaint only generally alleges that Defendant has infringed "one or more claims of the '863 Patent in at least this District by

making using, offering to sell, selling and/or importing without limitation, at least the Defendant products identified in the '863 Patent claim chart." Dkt. No. 15, ¶ 26.

Attached to the amended complaint is an amended claim chart that purports to include screenshots from Defendant's website that allegedly meet each of the claim elements. Dkt. No. 15-2 ("Claim Chart"). But as described below, these allegations are insufficient to meet the requirements under Rule 12(b)(6).

### III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal of a complaint is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure when the complaint does not state a claim upon which relief can be granted or "provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Sullivan*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted). Additionally, while facts are taken as true, legal conclusions are given no deference. *See Iqbal*, 556 U.S. at 678.

#### A.    Patent Eligibility

Patent eligibility under 35 U.S.C. § 101 is a threshold legal issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010) (affirming denial of patent application under section 101). Accordingly, the section 101 inquiry is properly raised during the pleadings stage "when there are no factual allegations that, when taken as true, prevent resolving the eligibility question as a matter of law." *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1007 (Fed. Cir. 2018); *see Ultramercial, Inc. v. Hulu, LLC*, 772 U.S. 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring) (reasoning that the section 101 inquiry was properly raised during the pleadings stage because it was clear from

2

the face of the patent that the asserted claims were not directed to patentable subject matter). In these situations, claim construction is not required to make a section 101 determination. *Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273 (Fed. Cir. 2012).

Section 101 of the Patent Act specifies four categories of patent-eligible subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. However, there are three exceptions: "laws of nature, physical phenomena, and abstract ideas." *Diamond v. Chakrabarty*, 447 U.S. 303, 308 (1980). To determine if a patent claim is directed to an abstract idea, courts use a two-step analysis. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217 (2014). First, the court determines "whether the claims at issue are directed to a patent-ineligible concept" by looking at "the 'focus' of the claims" and their "character as a whole." *Id.*; *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018). Courts examine the patent's "claimed advance," and "[i]n cases involving software innovations, this inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool.'" *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). Second, if the claims are directed to an abstract idea, the court evaluates whether there is "an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Alice*, 573 U.S. 208 at 217–18. In other words, there must be "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 221.

### B.    Sufficiency of the Pleadings

In the context of patent infringement, a patent owner must provide sufficient specificity to put the defendant on notice of which of the defendant's products are at issue. *See Artrip v. Ball Corp.*, 735 F. App'x 708, 714–15 (Fed. Cir. 2018). "There must be some allegation of specific

services or products of the defendants which are being accused." *Addiction & Detoxification Inst. L.L.C. v. Carpenter*, 620 F. App'x 934, 937 (Fed. Cir. 2015) (affirming dismissal under Rule 12(b)(6) where complaint lacked detail "that would put Defendants on notice as to what activity, method, or procedure is alleged to infringe"). "Although [Plaintiff] is not required to attach claim charts or allege how each limitation of a claim is infringed, [Plaintiff] must still 'articulate *why* it is plausible that the accused product infringes the patent claim.'" *Heidary v. Amazon.com, Inc.*, 2024 WL 4489918 (Fed. Cir. Oct. 15, 2024) (quoting *Bot M8 LLC v. Sony Corp.*, 4 F.4th 1342, 1352–53 (Fed. Cir. 2021)).

## IV.    ANALYSIS

Despite the opportunity to amend, Plaintiff's amended complaint fails for two independent reasons. First, the claims of the '863 Patent are directed to an abstract idea without an inventive concept sufficient to transform the claimed idea into patent-eligible subject matter. Thus, the Court should dismiss the amended complaint under Rule 12(b)(6). *See Alice*, 573 U.S. at 219; *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 2015 WL 3757497, at *5 (W.D. Tex. June 12, 2015). Second, Plaintiff fails to allege a plausible claim of infringement, thereby providing an alternative reason for the Court to dismiss the amended complaint under Rule 12(b)(6).

### A.    The '863 Patent Is Patent-Ineligible Under 35 U.S.C. § 101 and Should Be Dismissed.

#### 1.    Independent claim 9 is representative of the remaining claims.

Independent claim 9 is representative of the remaining claims of the '863 Patent. When claims are "substantially similar and linked to the same abstract idea," a representative claim can be used by the court to focus its section 101 analysis. *See Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014). Claim 9 is the only

independent claim of the '863 Patent mapped in the Claim Chart, but the remaining independent

claims are substantially similar:

| Limitation | Claim 9 | Claim 1 | Claim 18 |
|---|---|---|---|
| PRE | A method for authenticating at least one web page, the method comprising: | A method for authenticating at least one web page, the method comprising: | A method for authenticating at least one web page, the method comprising: |
| A | **storing** at least one authenticity stamp in a preferences file located in a file location; | **storing** at least one authenticity stamp in a preferences file located in a file location *accessible by one or more designated servers*; | **storing** at least one authenticity stamp in a preferences file located in a file location *accessible by one or more designated servers*; |
| B | **creating**, by one or more designated servers, an authenticity key with information to locate the preferences file; | **creating**, by *the* one or more designated servers, an authenticity key with information to locate the preferences file; | **creating**, by *the* one or more designated servers, an authenticity key with information to locate the preferences file; |
| C | **receiving**, *at the one or more designated servers*, a request from a client computer for the at least one web page; | **receiving** a request from a client computer for the at least one web page; | **receiving** a request from a client computer for the at least one web page; |
| D | **creating**, by the one or more designated servers, formatted data corresponding to the requested at least one web page; and | **creating**, by the one or more designated servers, formatted data corresponding to the requested at least one web page; | **creating**, by the one or more designated servers, formatted data corresponding to the requested at least one web page; |
| E | **receiving**, at the one or more designated servers, a request for the authenticity key used to locate the preferences file; | **receiving**, at the one or more designated servers, a request for the authenticity key used to locate the preferences file; | **receiving**, at the one or more designated servers, a request for the authenticity key used to locate the preferences file; |
| F | **sending**, *by the one or more designated servers*, the formatted data to the client computer; | **sending** the formatted data to the client computer; | **sending** the formatted data to the client computer; |

| Limitation | Claim 9 | Claim 1 | Claim 18 |
|---|---|---|---|
| G | **providing**, *by the one or more designated servers*, the authenticity key for processing to determine the file location of the preferences file; | **providing** the authenticity key for manipulation to determine the file location of the preferences file; | **providing** the authenticity key for processing to determine the file location of the preferences file; |
| H | **processing** the authenticity key to determine the file location of the preferences file; | ***manipulating*** the authenticity key to determine the file location of the preferences file; | **processing** the authenticity key to determine the file location of the preferences file; |
| I | **locating** the preferences file in the file location; | **locating** the preferences file in the file location; | **locating** the preferences file in the file location; |
| J | **retrieving** the at least one authenticity stamp from the preferences file; and | **retrieving** the at least one authenticity stamp from the preferences file; and | **retrieving** the at least one authenticity stamp from the preferences file; and |
| K | **enabling** the at least one authenticity stamp to be displayed with a representation of the formatted data on a display of the client computer. | **enabling** the at least one authenticity stamp to be displayed with a representation of the formatted data on a display of the client computer. | **enabling** the at least one authenticity stamp to be displayed with a representation of the formatted data on a display of the client computer. |

'863 Pat., claims 1, 9, 18 (emphases added).

All three independent claims describe identical functionality. The claims all describe a method that stores at least one authenticity stamp in a preferences file at a specific location, creates an authenticity key containing information to locate this file, receives a web page request from a client computer, generates formatted data for the requested web page, receives a request for the authenticity key, sends the formatted data to the client, provides the authenticity key for processing to determine the file location, processes the key to find the preferences file, retrieves the authenticity stamp from the file, and enables the authenticity stamp to be displayed alongside the

formatted data on the client computer's display. *Id.*; *see also id.*, Figs. 6A–10. Indeed, the preamble and steps D, E, H, I, J, and K are identical both in functionality and language for each independent claim.

The minor differences between the three independent claims do not change the fact that the claims are substantially similar and linked to the same abstract idea discussed below. *See Content Extraction*, 776 F.3d at 1349. Claims 1 and 18 include "one or more designated servers" in step A while claim 9 does not. However, the result of the step and the functionality described remains unchanged as claim 9 includes, like the other two claims, the "one or more designated servers" in step B. Similarly, claim 9's inclusion of "at the designated server" for steps C, F, and G does not alter functionality or the result of the step. And claim 1's use of "manipulating" in step H, instead of the use of "processing" as in claims 9 and 18, does not change the fact that the claims are otherwise substantially similar. Indeed, step H for each of the three independent claims results in using "the authenticity key to determine the file location of the preferences file." '863 Pat., claims 1, 9, and 18.

The remaining dependent claims of the '863 Patent add only minor, conventional limitations that do not alter the core concept of the invention or supply an inventive concept. *Id.*, claims 2–8 (dependent to claim 1), claims 10–17 (dependent to claim 9), and claims 19–20 (dependent to claim 18); *see BSG Tech. LLC v. BuySeasons, Inc.*, 899 F.3d 1281, 1291 (Fed. Cir. 2018); *Ultramercial*, 772 F.3d at 715–16.

Accordingly, claim 9 is representative of the eligibility issues present in the patent, as the other independent and dependent claims do not introduce functionality that alters the outcome of the analysis. *See generally* Dkt. No. 15-1. Thus, the Court can focus its section 101 analysis on claim 9 of the '863 Patent.

2.    **The '863 Patent is directed to an unpatentable abstract idea under** *Alice* **step one.**

Claim 9 fails step one of the *Alice* analysis because it is directed to the unpatentable, abstract idea of gathering, processing, and displaying data. Claim 9 is directed to an abstract idea because (i) it is directed to an idea that the Federal Circuit has consistently held to be abstract, (ii) it does not improve computer functionality, and (iii) it uses broad, functional language that lacks any specificity to confer non-abstractness.

In the amended complaint, Plaintiff seeks to avoid dismissal by reciting that the invention is novel and not conventional with nominal citations to the specification. *See First-Class Monitoring, LLC v. United Parcel Serv. of Am., Inc.*, 389 F. Supp. 3d 456, 471 (E.D. Tex. 2019) ("[A] plaintiff can[not] avoid dismissal simply by reciting in the amended complaint that the invention at issue is novel and that the inventive concept resides in the abstract idea itself."). For example, Plaintiff simply adds statements such as:

- "[T]he '863 Patent claims unconventional and inventive methods for web page authentication that integrate server-based authenticity key generation with client-side preference file management to create a robust, personalized authentication system. Among its inventive concepts is storing user-defined authenticity stamps in preference files with obscured locations, then using server-generated authenticity keys to locate and retrieve these stamps for display verification."

- "The method of Claim 9 represents a significant technological advancement by creating a distributed authentication architecture where authenticity verification relies on the coordination between server-generated keys and client-stored preferences rather than easily-counterfeited visual elements. . . . This inventive approach separates the authentication mechanism from the web content itself, making it virtually impossible for fraudsters to replicate without access to both the server-side key generation system and the user's specific preference file configuration."

- "The authentication system of the '863 Patent solves the technological problems of conventional web authentication by creating a personalized verification mechanism that cannot be replicated through simple copying of visual elements or domain spoofing."

- "The combination of these claim limitations creates a specific technological solution that transforms conventional web authentication from a system vulnerable to visual copying and domain spoofing into an intelligent, distributed authentication network that requires coordination between multiple technological components to verify authenticity."

*See, e.g.*, Dkt. No. 15 ¶¶ 13, 14, 17, 21–24.

Indeed, "[a]ny allegation about inventiveness, wholly divorced from the claims or the specification, does not defeat a motion to dismiss; only plausible and specific factual allegations that aspects of the claims are inventive are sufficient." *Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 538 (Fed. Cir. 2020) (internal quotations omitted).

Plaintiff's passing references to the '863 Patent's specification preceded by conclusory arguments regarding inventiveness are wholly divorced from the claims. *See, e.g.*, Dkt. No. 15 ¶¶ 10–24. Plaintiff cannot unilaterally declare that its claims are inventive or novel. *See Appistry, Inc. v. Amazon.com, Inc.*, 195 F. Supp. 3d 1176, 1183 n.6 (W.D. Wash. 2016), *aff'd sub nom.* 676 F. App'x 1008 (Fed. Cir. 2017) ("Plaintiff's position is absurd. Requiring the Court to accept such facts or legal conclusions (even in the form of an early expert declaration) would permit any plaintiff to circumvent the section 101 inquiry on an early motion to dismiss or motion for judgment on the pleadings simply by including a few lines attesting to the novelty of the invention."). Indeed, here, Plaintiff added attorney argument and unsupported legal conclusions to try to circumvent the section 101 inquiry presented by the original motion to dismiss. The Court should disregard Plaintiff's attorney argument and legal conclusions about the inventive aspects of its asserted patents. *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1366 (Fed. Cir. 2020) ("We disregard conclusory statements when evaluating an amended complaint under Rule 12(b)(6).").

a.    **The Federal Circuit has routinely found that claims directed toward the idea of gathering, processing, and displaying data are abstract.**

From the face of the patent itself, the Court should find that claim 1 is directed to an abstract idea because the Federal Circuit has held countless times in previous decisions that the steps of gathering, processing, and displaying data are abstract. For example, in *Universal Secure Registry LLC v. Apple Inc.*, the Federal Circuit affirmed dismissal under Rule 12(b)(6), holding that a representative claim was directed to a method for enabling a transaction between a user and a merchant where the merchant is given a time-varying code instead of the user's secure (credit card) information. 10 F.4th 1342, 1346–49 (Fed. Cir. 2021) , *cert. denied*, 142 S. Ct. 2707 (2022). The claims at issue recited generic steps such as generating verification codes, encrypting information, and storing credentials, but failed to explain how those steps were implemented or configured. *Id.* at 1346–47. The court emphasized that merely invoking encryption and tokenization without technical details could not overcome the abstract nature of the claims. *Id.* at 1348–49. Similarly, in *Prism Technologies LLC v. T-Mobile USA, Inc.*, the Federal Circuit affirmed dismissal of claims involving identity verification and access control using standard network elements. 696 F. App'x 1014, 1017–18 (Fed. Cir. 2017); *see also Universal Secure Registry*, 10 F.4th at 1349. The court held that steps such as "receiving" identity data, "authenticating" the user, and "authorizing" access using authentication servers were abstract because they relied on known components performing conventional functions. *Id.* Similar to both *Universal* and *Prism*, claim 9 of the '863 Patent recites the conventional actions of "storing," "receiving," "sending," "providing," "processing," "locating," "retrieving," and "enabling" authenticated data in a generic way.

And in *RecogniCorp, LLC v. Nintendo Co.*, the Federal Circuit affirmed dismissal of claims directed to the abstract idea of encoding and decoding image data. 855 F.3d 1322, 1326–27 (Fed. Cir. 2017). The court emphasized that the claims "do not go beyond stating the abstract idea" of

10

encoding and decoding without providing any specific implementation. *Id.* at 1327. Here, claim 9 similarly claims a method that reflects standard encryption and decryption practices, which, like the claim in *RecogniCorp*, is "an abstract concept long utilized to transmit information." *Id.* at 1326 (citing *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340–41 (Fed. Cir. 2017)); *see* '863 Pat. at 6:22-34, 45-59.

As another example, the Federal Circuit held that claims including the three steps of "(1) receiving a request containing a content-based identifier for a data item, (2) comparing the content-based identifier to a plurality of values, and (3) granting or disallowing access to the data item based on the comparison" were directed to an abstract idea. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1312, 1218 (Fed. Cir. 2021); *see also Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (holding that claims directed to "a process of gathering and analyzing information of a specified content, then displaying the results" without having "any particular assertedly inventive technology for performing those functions," were abstract); *Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1327 (Fed. Cir. 2017) (concluding that the Federal Circuit had, in previous cases, "held other patent claims ineligible for reciting similar abstract concepts that merely collect, classify, or otherwise filter data"). Further, simply combining abstract ideas—such as collecting, organizing, storing, and processing data—into one claim "does not render the claim non-abstract." *RecogniCorp*, 855 F.3d at 1327. Here, the '863 Patent includes the similar steps as the patent in *PersonalWeb*, which merely results in "gathering and analyzing information of a specified content, then displaying the results." *PersonalWeb*, 8 F.4th at 1312, 1218. Further, just because the claim includes intervening authentication steps, concepts that themselves were found abstract in cases discussed above, does not render the claim non-abstract. *RecogniCorp*, 855 F.3d at 1327.

In addition, the Federal Circuit has repeatedly treated "analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category." *Elec. Power Grp.*, 830 F.3d at 1354. The steps presented in claim 9 are inherently mental processes within the abstract-idea category. *See* '863 Pat. at 1:65–2:2. Indeed, the '863 Patent simply purports to automate the practice of issuing seals of authenticity, such as a notary. The patent's inclusion of computers and its automation of this routine process does not overcome *Alice* step one. Thus, based on this Federal Circuit precedent, the Court should find the '863 Patent directed toward an abstract idea.

> **b.      The claims do not provide improvements to computer functionality such that abstractness is overcome.**

The claims of the '863 Patent also fail under section 101, as they provide no improvements to computer functionality. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363–65 (Fed. Cir. 2020) (holding, amid the analysis at step one, that "to be directed to a patent-eligible improvement to computer functionality, the claims must be directed to an improvement to the functionality of the computer or network platform itself"). Here, claim 9 does not recite any improvement but rather recites the performance of the abstract idea using previously invented generic computer, authentication, and internet features such as "designated servers," "preferences file," "web page," and "client computer." '863 Pat., claim 9. These are nothing more than generic descriptions of computer components and functions that do not rise to the level of improvement, either individually or as an ordered combination. *See Content Extraction*, 776 F.3d at 1347–48 (quoting *Alice*, 573 U.S. at 221 (finding a computer in a computer-implemented invention "must involve more than performance of 'well-understood, routine [and] conventional activities previously known to the industry'" to be meaningful)).

The Federal Circuit has held that such reliance on conventional computing components, without any disclosed improvement in their functioning, renders claims abstract. *Universal Secure Registry*, 10 F.4th at 1346–49 (affirming dismissal of claims that used encryption, tokenization, and secure authentication steps implemented through standard mobile devices and servers that did not otherwise offer an improvement to existing authentication systems); *see Prism Techs.*, 696 F. App'x at 1017–18 (finding claims abstract where they involved verifying a user's identity and controlling access using routine computing structures like authentication servers and databases); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 774 (Fed. Cir. 2019), *cert. denied*, 140 S. Ct. 983 (2020) (for claims that applied network functionality to electric-vehicle charging stations, holding that remote control and communication—absent any technological improvement—could not transform conventional equipment into patent-eligible subject matter); *RecogniCorp*, 855 F.3d at 1326–27 (Fed. Cir. 2017).

The '863 Patent confirms the absence of any technical innovation or improvement to how computers operate. Claim 9 impliedly uses cryptographic tools to create the "authenticity key" but does not claim any novel improvement in encryption or computer processing itself. For example, the specification confirms that the encryption portion of authenticating a web page makes use of longstanding SHA-1 hashing protocols. *See* '863 Pat. at 10:46-64. And, as discussed above, the specification discusses using well-known private-public key pairs to accomplish encryption. *Id.* at 6:22–34, 45–59.

Like the claims in *Universal Secure*, *Prism*, and *ChargePoint*, the '863 Patent invokes standard cryptographic techniques and known devices to achieve a conventional objective— verifying authenticity of a source—without offering a technological solution or unconventional application. *Contra Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335–36 (Fed. Cir. 2016)

(claims directed to improvements in the functioning of a computer itself are not abstract). As in *TLI Communications LLC v. AV Automotive LLC*, 823 F.3d 607, 613 (Fed. Cir. 2016), the specification "fails to provide any technical details for the tangible components" and instead describes the system and methods "in purely functional terms." Because the '863 Patent applies routine methods in a conventional scenario, the claims do not improve the functioning of a computer itself or demonstrate any innovation unique to computing that would remove them from the realm of abstract ideas.

For the reasons discussed above, representative claim 9 of the '863 Patent is directed to an abstract idea requiring consideration of *Alice* step two.

### 3. The '863 Patent does not show an inventive concept under *Alice* step two.

The '863 Patent also fails the second step in the *Alice* analysis, which requires the Court to determine whether the claims contain "an inventive concept sufficient to transform the claimed abstract idea into a patent eligible application." *Alice*, 573 U.S. at 221 (internal citations and quotations omitted). "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp.*, 855 F.3d at 1326–27; *Accenture Glob. Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013). Under *Alice* step two, if the asserted elements "involve 'well-understood, routine, [and] conventional activity,' they do not constitute an 'inventive concept,'" *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 73 (2012)). Additionally, under *Alice* step two, "[i]nstructing one to 'apply' an abstract idea and reciting no more than generic computer elements performing generic computer tasks does not make an abstract idea patent-eligible." *Intell. Ventures I*, 792 F.3d at 1368 (citing *Alice*, 573 U.S. at 225-26). Nothing in the '863 Patent claims saves the claims from the second step of *Alice*. And

14

for the same reasons discussed above, Plaintiff's attorney argument and legal conclusions regarding conventional activities and inventive concepts amended to the amended complaint should be disregarded, as they are conclusory statements attempting to circumvent the instant inquiry. *See Appistry, Inc.*, 195 F. Supp. 3d at 1183 n.6.

The '863 Patent's "Method for Authenticating Electronic Content" involves well-understood, routine, and conventional activities and employs generic computer elements. Further, the addition of generic computer components, such as "designated servers," "preferences file," "web page," and "client computer" does not provide an inventive concept. *See* '863 Pat., claim 9. The specification itself expresses that an improvement provided by the claimed invention is the removal of "human involvement," showing that the '863 Patent contemplates using generic computer components to automate an abstract, human activity. *Id.* at 1:25–2:9. The inclusion of these combined generic computer components does not create an inventive concept that would survive step two.

Since the '863 Patent is directed to an abstract idea and does not possess an inventive concept, dismissal at the pleading stage pursuant to Rule 12(b)(6) is warranted under section 101.

#### 4.    This issue is ripe for resolution at the pleading stage.

The issue of patent eligibility is ready for the Court's consideration because there are no questions of fact that would preclude dismissal at this stage. As an initial matter, "there is clear and convincing evidence that the claim limitations are merely 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Aatrix Software*, 882 F.3d at 1128. Nothing within the amended complaint contends otherwise.

Further, claim construction is unnecessary to rule on the eligibility of the Asserted Patent, as the "basic character of the claimed subject matter" is clearly evident. *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413 (D.N.J. 2015), *aff'd*, 636 F.

App'x 1014 (Fed. Cir. 2016); *Pres. Wellness Techs. LLC v. Allscripts Healthcare Sols.*, 2016 WL 2742379, at *6 (E.D. Tex. May 10, 2016) (Bryson, J.) (citing *Bancorp Servs.*, 687 F.3d at 1274). Thus, the Court should dismiss the case as the '863 Patent is patent-ineligible on its face.

### B.    The Amended Complaint Fails to Allege a Plausible Claim for Patent Infringement.

Plaintiff's direct-infringement allegations do not meet the pleading standards. Dkt. No. 15 ¶¶ 26, 27.[1] First, the amended complaint does not allege sufficient facts showing that Defendant performs all steps of the asserted method claim, as required under 35 U.S.C. § 271(a). Instead, the allegations rely on generalized assertions that do not reference Defendant or describe its conduct. Second, the Claim Chart further identifies multiple actors involved in the alleged personalization process but does not allege that a single entity performs each step or that any conduct is attributable to Defendant.

Instead of addressing the deficiencies identified in Defendant's initial motion to dismiss, Plaintiff's Claim Chart only adds the statement "[o]n information and belief, during the term of the patent, Defendant's employees practiced this step of the claimed method by designing, accessing, testing, and/or utilizing Defendant's web page," followed by verbatim recitation of the limitation language. Dkt. No. 15-2 at 4, 6, 7, 8, 9, 11. But, pleading "on information and belief" is permitted "only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1330 (Fed. Cir. 2009). Here, Plaintiff does not plead any facts in the amended complaint or the amended claim chart concerning Defendant's employees to even draw a "plausible inference."

---

[1] The amended complaint only alleges direct infringement and does not attempt to allege indirect or contributory infringement.

16

Because the amended complaint fails to support Plaintiff's entitlement to relief with "factual content," not just conclusory allegations that the accused product(s) meet every claim limitation, Rule 12(b)(6) requires dismissal of the claims for infringement of the '863 Patent.

### 1. Plaintiff fails to allege facts sufficient to support a plausible claim of infringement.

Plaintiff's pleading fails to allege facts that, if accepted as true, would establish that Defendant performs even a single step—much less every step—of the seven-step method recited in claim 9 of the '863 Patent. Direct infringement of a method claim under 35 U.S.C. § 271(a) exists only when "all steps of a claimed method are performed by or attributable to a single entity." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc). A method claim "is directly infringed only by one practicing the patented method"; the "sale or manufacture of equipment to perform a claimed method is not direct infringement within the meaning of 35 U.S.C. § 271(a)." *Brumfield v. IBG LLC*, 97 F.4th 854, 879 (Fed. Cir. 2024) (quoting *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 775 (Fed. Cir. 1993)); *Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1313 (Fed. Cir. 2003); *see also Joy Techs.*, 6 F.3d at 773 ("The law is unequivocal that the sale of equipment to perform a process is not a sale of the process within the meaning of section 271(a).").

Plaintiff's amended complaint only includes boilerplate recitations of the required elements to state a claim for patent infringement. Dkt. No. 15 ¶¶ 26–27, 30; *Bot M8*, 4 F.4th at 1353 (holding that "a plaintiff cannot assert a plausible claim for infringement under the *Iqbal*/*Twombly* standard by reciting the claim elements and merely concluding that the accused product has those elements"). At the outset, Plaintiff asserts—without accompanying factual detail—that Defendant has infringed the '863 Patent "by making, using, offering to sell, selling and/or importing" and "by having its employees internally test and use" the "Exemplary Products." Dkt. No. 15 ¶¶ 26–27.

This statement simply parrots statutory language of 35 U.S.C. § 271(a) and does not provide the requisite factual material beyond the recitation. *Id.* Muddling the allegations further, and indicative of the boiler-plate language used, the amended complaint states "[o]n information and belief, numerous other ***devices*** that infringed the claims of the '863 Patent have been made, used, sold, imported, and offered for sale by Defendant and/or its customers." *Id.* ¶ 26 (emphasis added). Not only does this language not make sense in the context of a patent that only includes method claims, but it also does not provide sufficient notice as to what the "Exemplary Products" are supposed to be.

Moreover, "testing" does not constitute "making" for purposes of a method-claim infringement analysis, and internal testing and use by employees therefore cannot, as a matter of law, amount to direct infringement of the asserted method claim. *Momenta Pharms., Inc. v. Teva Pharms. USA Inc.*, 809 F.3d 610, 616 (Fed. Cir. 2015). Plaintiff's reliance on the general allegation that Defendant infringed by making, using, offering for sale, and/or importing the accused cards is legally insufficient because those acts cannot, as a matter of law, directly infringe a method claim. The Federal Circuit has "indicated that direct infringement is limited to using the method." *Brumfield*, 97 F.4th at 879; *see also In re Kollar*, 286 F.3d 1326, 1332 (Fed. Cir. 2002) (distinguishing tangible products from process claims, which consist of a series of acts or steps).

Rather than provide the necessary factual details in the amended complaint, Plaintiff attached and incorporated by reference a Claim Chart to purportedly show that "the Exemplary Defendant Products practice the technology claimed by the '863 Patent . . . [and] satisfy all elements of the Exemplary '863 Patent Claims." Dkt. No. 15 ¶ 28. Plaintiff's infringement allegations therefore rest entirely on a Claim Chart attached as Exhibit 2 to the amended complaint.

*See* Claim Chart. The Claim Chart fails to clarify, let alone substantiate, how the website domain owned by Defendant satisfies each and every limitation.

Specifically, depictions of the website owned by Defendant say nothing about whether Defendant itself practices each step of the patented method for "personalizing an authentication token." *Id.* For example, Plaintiff's Claim Chart relies on the appearance of a profile image on the webpage as the "authenticity stamp," but does not point to anything that demonstrates that this image is the byproduct of an authentication or encryption process as discussed in the specification. *Compare id.* at 3, 6, 7, 10, 15, 17, 18, *with* '863 Pat. at 4:8–5:7. Further, Plaintiff highlights the pickleball.com logo, but the specification discusses that these graphics (including the profile picture) can be copied by a counterfeiter. '863 Pat. at 1:25-40, 10:40-45. And as a further example, Plaintiff selects a random portion of a URL associated with the profile image and labels it the "authenticity key." Claim Chart at 5, 8, 9, 11, 12, 13. However, these barebone labels, not supported with accompanying explanations, do not provide any notice to Defendant of how the portion of the URL satisfies "creating . . . an authenticity key" as described in the specification, how the website populating a user profile involves "a request for the authenticity key," how the authenticity key is "provid[ed] . . . for processing," or how the website involves "processing the authenticity key." '863 Pat., claim 9. Indeed, the specification describes a much more involved process regarding the authenticity key than just a random string of numbers appearing in a particular URL. *Id.* at 10:46–11:54.

As another example, Plaintiff relies on a second website to demonstrate certain limitations, but does not connect the two websites' functionality, nor explain how a combination of the two websites constitutes infringement. *See* Claim Chart at 6–8, 10, 11, 13, 15, 18 (citing

pickleballclubs.com instead of pickleball.com). Furthermore, Plaintiff's screenshots attributed to the second website are not accurate depictions:



https://pickleballclubs.com/?search=leagues

*Id.* at 18.



*See* https://pickleballclubs.com/?search=leagues (visited on 10/3/2025).

Without factual allegations that Defendant itself performs every claimed step, no plausible inference of direct infringement arises. *See NTP, Inc. v. Rsch. in Mot., Ltd.*, 418 F.3d 1282, 1318 (Fed. Cir. 2005) ("It is well established that a patent for a method or process is not infringed unless all steps or stages of the claimed process are utilized."). In sum, Plaintiff's bare-bones assertions do not cross the line from conceivable to plausible. *Twombly*, 550 U.S. at 548.

### 2. Plaintiff fails to allege that a single entity performs every step of the claimed method.

To state a claim for direct infringement of a method patent, a plaintiff must allege that a single entity performed each and every step of the claimed process. *Akamai Techs.*, 797 F.3d at 1022 (finding direct infringement exists only when "all steps of a claimed method are performed by or attributable to a single entity"); *NTP, Inc.*, 418 F.3d at 1318 (finding a requirement that "all steps or stages of the claimed process are utilized" to establish infringement (quoting *Roberts Dairy Co. v. United States*, 530 F.2d 1342, 1354 (Ct. Cl. 1976))); *Medisim Ltd. v. BestMed LLC*, 910 F. Supp. 2d 591, 610 (S.D.N.Y. 2012) ("For process patent or method patent claims, infringement occurs when a party performs all of the steps of the process."). The patent identifies several potential entities involved in the process: a user, a client computer, designated servers, and, included in the specification, the potential for an additional authentication server. '863 Pat. at Abstract, 2:13-16. In addition to not clarifying which of these roles Defendant performs, Plaintiff does not assert that any one of them, singly or collectively, performs every step of the claimed method. *Akamai Techs.*, 797 F.3d at 1022.

## V.    CONCLUSION

The amended complaint should be dismissed with prejudice for asserting a patent directed to patent-ineligible subject matter and for failing to state a claim for direct or induced infringement.

Dated: October 3, 2025                    Respectfully submitted,

                                          **WINSTON & STRAWN LLP**


                                          */s/ Ahtoosa Dale*
                                          Scott C. Thomas SBN (24046964)
                                          scthomas@winston.com
                                          Ahtoosa Dale SBN (24101443)
                                          adale@winston.com
                                          2121 North Pearl Street, Suite 900
                                          Dallas, TX 75201
                                          Telephone: +1 214-453-6500
                                          Facsimile: +1 214-453-6400

                                          *Attorneys for Defendant Pickleball OpCo LLC*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document has been served on counsel of record, who are deemed to have consented to electronic service, on October 3, 2025, via electronic filing using the Court's CM/ECF system.

*/s/ Ahtoosa Dale*